(54 App. Div. 217.)

PEOPLE ex rel. UNITED VERDE COPPER CO. v. FEITNER et al., Commissioners of Taxes.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

1. TAXATION—FOREIGN CREDITS.

Under Laws 1896, c. 908, § 3, declaring that all personal property situated or owned within the state is taxable; and section 2, subd. 4, defining "personal property" as all debts due from solvent debtors, whether on account, contract, bond, or mortgage,—a corporation of the state was taxable on money deposited in banks without the state on bills receivable for goods sold to persons without the state, on sums due for goods sold and in transit to purchasers without the state, and for bonds of a foreign railroad kept without the state.

2. SAME—CERTIORARI.

Since the statutes expressly provide that a party can only maintain certiorari to review a tax assessment where he has been aggrieved by it, where relator claimed that certain debts owing by it should have been deducted from the assessment, but it appeared that the assessors had erroneously failed to assess property which, if assessed, would have made relator's assessment greater than it was, though the debts were deducted, the question whether the debts should have been deducted would not be considered, since relator was not aggrieved by their assessment.

Appeal from special term, New York county.

Certiorari by the people, on the relation of the United Verde Copper Company, against Thomas L. Feitner and others, commissioners of taxes. From an order quashing the writ, relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Henry G. Atwater, for appellant.
James M. Ward, for respondents.

RUMSEY, J. The relator is a corporation organized under the laws of the state of New York, having its general office in the city of New York, and engaged in the business of mining and selling copper at its mines in the territory of Arizona. On the second Monday of January, 1899, an assessment was made against it by the respondents to the amount of $3,000,000. On the 1st of April in that year the relator applied for a reduction of the assessment, and, upon an examination of its officers, a full statement of its assets and liabilities was made, as a result of which the assessment was reduced

66 N.Y.S.—49

from $3,000,000 to $1,443,920. It is to review the determination of the assessors in making that reduction, and fixing the amount at the last-named sum, that this certiorari was brought.

It appears that the capital of the relator is $3,000,000, and its surplus at the time of the assessment was something over $671,500. Its actual assets were $3,814,452, and the amount of its debts was $142,944. These assets consisted of cash in various banks to the amount of $567,305, of which about $120,000 was deposited in banks in the city of New York, and the remainder in various banks outside of this state. The corporation had bills and accounts receivable to the amount of $1,018,058 for copper sold by it to persons and corporations outside of the state of New York. All of these were payable at the office of the company in New York, except a certain portion, the amount of which is not stated, which was payable in Chicago, to be deposited in a bank in that city to the credit of the relator. It also had debts due to it for copper which had been sold and was then in transit to the purchasers, who were corporations and firms not within the state of New York. These debts amounted to $630,000, and were payable at the office of the company. It also owned $551,950 of New York City bonds, $300,000 of the bonds of the United Verde & Pacific Railway Company, and about $30,000 in stock of the same company. In Arizona it had real estate of the value of $116,250, and personal property used in its works valued at $299,495. It also owned a small amount of office furniture in the city of New York.

In reaching the amount of the assessment as finally fixed, the respondents deducted 10 per cent. of the capital of the corporation, the United Verde & Pacific Railway bonds and stock, the New York City bonds, the debts due for copper in transit, and the machinery and real estate outside of the state of New York. The relator insists that this assessment should be further reduced by deducting the bills and accounts receivable for copper and the deposits in banks outside of the state of New York. There is no dispute as to the legal condition of the debts which it is sought to have deducted. The deposits in the various banks are debts due from those banks to the depositor. Cragie v. Hadley, 99 N. Y. 131–133, 1 N. E. 537. They are payable upon the checks of the relator drawn in New York, or wherever it sees fit to draw them. The bills and the accounts receivable are due for copper which has been sold and are payable at the general office of the relator in the city of New York, except such as, for its own convenience, it has caused to be made payable in Chicago, to be deposited there in banks subject to its checks. These are all intangible assets, or, at least, are represented by securities or notes which have been given to the relator by the various debtors.

The relator, being organized under the laws of the state of New York, is, of course, for the purposes of taxation, a resident of this state. The only question is whether debts due to a resident of this state are assessable to it. A short examination of the changes in the tax laws of this state will make it quite easy to answer that question in the affirmative.

Under the Revised Statutes, it was provided that all lands and personal estate within this state, whether owned by individuals or corporations, should be liable for taxes. 1 Rev. St. p. 387, § 1. In construing this section, the court of appeals has held that the personal property "within this state" which was taxable pursuant to the law was only that which had its actual situs in the state, and where the property was actually situated outside of the state, so that it might in fact be subject to taxation in another jurisdiction, it was not properly to be taxed in this state. People ex rel. Hoyt v. Commissioners of Taxes, 23 N. Y. 224. In that case the relator had been assessed for capital invested in his business in New Orleans and upon the chattels on his farm in New Jersey. It was held that an assessment upon these two items was not within the statute. The opinion was delivered by Judge Comstock. Admitting in the opinion that the general rule of law was that the situs of personal property was the domicile of the owner, he concluded, after an examination of the statute, in view of its provisions, that rule did not control in the case of an assessment, and that the only personal property which could be held to be within the state, under the statute, was property which was actually situated in the state, and that property outside the state, and subject to the taxing powers of another jurisdiction, could not be assessed. But Judge Comstock, in delivering the opinion of the court, took pains to say that it was undoubtedly within the power of the legislature to tax all personal property of residents of the state wherever found, but that it had clearly not intended to exercise that power, because, if it had, it would undoubtedly have said so, and, since it had not, it could not. be inferred that any such intention existed. This case seems to have been received as the law of this state for many years. It was followed in 1882, in the case of People v. Smith, 88 N. Y. 576. In that case the relator was the owner of a large number of debts secured by mortgages on property in other states, and the securities were held for him by his agents in those states. Having been assessed for those debts in this state, he sued out a writ of certiorari to review that assessment, and the court, following the decision in the Hoyt Case, supra, held that the bonds and securities so held by his agents without this state were not personal property within the state, and were therefore not subject to taxation. Judge Earl said there was no more authority for taxing personal property not within the state than there was for taxing lands not within the state.

The legislature, at the next session after this decision had been promulgated, passed an act which provided that "all debts and obligations for the payment of money due or owing to persons residing within this state, however secured, or wherever such security shall be held, shall be deemed for the purposes of taxation personal estate within this state, and shall be assessed as such to the owner or owners thereof in the town, village or ward in which such owner or owners shall reside at the time such assessment shall be made." Laws 1883, c. 392. That law continued in force until the tax law reported by the statutory revision commission had been passed. That commission reported to the legislature a statute reading as

follows: "All real property and all personal property situated or owned within this state is taxable, unless exempt from taxation by law." The statute was not passed, however, in precisely that form, but before passage it was amended to read as follows: "All real property within this state and all personal property situated or owned within this state is taxable unless exempt from taxation by law." Laws 1896, c. 908, § 3. By the same act the legislature defined "personal estate" as follows: "All household furniture; monies; goods; chattels; debts due from solvent debtors, whether on account, contract, note, bond or mortgage; public stocks and stocks in monied corporations." Id. § 2, subd. 4. This definition includes within its terms the bank deposits and the bills and accounts receivable payable to the relator, and the only question is whether it can be said, in view of the legislation on the subject in this state, the legislature did not intend to include everything which is plainly within the terms of the definition.

There is no question of the power of the legislature to include debts due to a resident of the state, whether from residents or non-residents, in his taxable property. The intention of the legislature with respect to the taxation of personal property can only be ascertained by considering the statute upon the subject. An examination of the changes in this statute, made from time to time, shows quite clearly that the object of these changes has been to increase the jurisdiction of the assessors over personal property, and to include property which, by the decisions of the courts, had theretofore been excluded. This is plain from a comparison of the Revised Statutes with the law of 1883, which was undoubtedly passed to meet and overthrow the rule laid down in People v. Smith, supra, by the court of appeals.

The law of 1883, above referred to, in terms made taxable every debt belonging to a resident of the state, no matter whether the person from whom it was owing lived within or without the state. The object of the statute was undoubtedly, at least so far as debts and obligations were concerned, whether secured or unsecured, to apply what is said to be the fiction of the law that the situs of a debt is the domicile of the owner. That statute is susceptible of no other construction than that every debt owned by a resident of this state is assessable against him in the state. The tax law passed in 1896 did not change this rule. By express terms it made all personal property owned within the state assessable to the owner here, and, as the term "personal property" was in express words made to include all debts due from solvent debtors, it must be held to include all the debts owned by the relator which are the subject of this controversy. The result is that the respondents were correct in including within this assessment not only the property which they did include, but that, within the plain reading of the statute, they would not have erred if they had also assessed the relator for the bonds of the United Verde & Pacific Railway Company, and the debt of $630,000 owing to it for copper which had been sold, and was then in transit to the purchasers. The relator would not then have been aggrieved had the assessment been increased by the sum of

$930,000. But, by the express terms of the statute, a party can only maintain a certiorari to review an assessment where it has been aggrieved by it. People v. Barker, 66 Hun, 23, 20 N. Y. Supp. 797, affirmed 137 N. Y. 544, 33 N. E. 336. The theory upon which the assessment is made is of no importance. The only question to be examined in a case like this is whether the relator can be said to be aggrieved because the amount of the assessment is too large. As the assessment might have been nearly $1,000,000 larger without any violation of the relator's rights, there is no necessity of determining whether its debts should have been deducted from the amount of the assessment as fixed by the respondents.

Upon the whole case it is clear that the relator has no cause for complaint, and that the order quashing the writ was correct, and must be affirmed, with costs and disbursements in this court. All concur.