THE STATE EX REL. AMERICAN AUTOMOBILE INSURANCE COMPANY v. FREDERICK GEHNER, Assessor of City of St. Louis and as President, and A. R. SCHOLLMEYER ET AL as Members of Board of Equalization of City of St. Louis.—8 S. W. (2d) 1057.

Court en Banc, July 3, 1928.

704

*Bryan, Williams & Cave* for relator.

706

*Julius T. Muench* and *Charles J. Dolan* for respondents.

WHITE, J.—An original proceeding in certiorari, wherein the relator prays this court to quash an assessment for taxes for June, 1925, approved by the respondents, constituting the Board of Equalization for the City of St. Louis.

On the petition and return the relator filed a motion for judgment. After a former hearing and ruling by this court a motion for rehearing was sustained, the case reargued and again submitted, with eight other cases. On the rehearing nine cases were argued as one, counsel on both sides seeming to consider that a single issue common to all the cases was determinative of them all. In doing so the reason for granting a rehearing was entirely lost sight of. Some of those cases involve tax assessments against life insurance companies, and others against fire and liability insurance companies. This particular company insures against fire, theft and liability. The one issue common to all the companies turned upon the constitutionality of Section 6386, Revised Statutes 1919. The argument was mainly presented by attorneys for life insurance companies.

I. The principal point made by counsel for relators in the argument was that the reserve of a life insurance company is not the property of the company, but the property of the policyholders, in the sense that bank deposits are the property of the depositors, and taxable as such to the policy-holders. No claim is made that fire and indemnity insurance policies are taxable. One thing in common to the two policies is that each may be canceled or surrendered for a certain cash value. But if they are not so canceled, the life insurance policy is certain to be paid in the end; whether the loss secured by a fire insurance policy shall ever be paid is contingent. The beneficiary in a life insurance policy has a vested interest, so to speak, in the reserve which must be paid at the death; an event certain to occur. But a fire insurance policy, particularly automobile insurance, usually runs for a year. It is a remote contingency only that payment for loss would be demanded during that period. So, the interest in the reserves of the policyholders in a life insurance company is different, both in kind and degree, from that of a policyholder in the reserves of a fire insurance or liability insurance company. This distinction should be borne in mind in considering Section 6386, and the oral argument in the case.

This case, however, can be determined upon another principle.

II. The Board of Equalization in passing upon the tax return of the relator found that the amount of the legally required reserve of the company, and the amount of unpaid claims against the company, were correctly stated; therefore, the relator contends, the only question for consideration is whether Section 6386 is unconstitutional. We cannot agree to that conclusion. The *construction* of Section 6386 was before the Board of Equalization, and is before this court just as prominently as its constitutionality, and so is the construction of every other statute affecting the case.

The board took evidence and made the findings mentioned. It also found that the relator had taxable assets amounting to $375,000, and assessed that sum to it. If a proper construction of Section 6386, and other sections, would allow that amount of taxable property to be assessed to the relator, the assessment of the board should stand though the board acted upon an erroneous theory. We are not bound by the reasons which the board advanced for approving the assessment. Relator quotes from State ex rel. American Automobile Insurance Co. v. Schramm, 271 Mo. 223, and states that Section 6386 "prescribes a system of taxation of *net* assets." If on the face of the return for taxation, presented by the relator to the assessor, it appears that relator had taxable property, in excess of all proper deductions, amounting to $375,000, or more, then the assessment should stand, whatever reason actuated the board in sustaining that assessment. The *statement of relator's taxable assets was not considered at all.*

III. One important fact obtrudes itself upon our attention, if relator is sustained. This company pays no taxes either in this State or any other, as we shall presently show. No matter how prosperous it is, no matter how great dividends it may pay to its stockholders, it contrived a statement which would prevent it paying any taxes anywhere of any kind or character. For the purpose of taxation it is insolvent. True it has two hundred and fifty-six thousand dollars in non-taxable securities, but even so, with the deductions it claims, its actual assets are slightly above insolvency. On that statement it is not in position to do business in this State.

The abstract of the record does not show how much capital stock the company has, nor how much surplus. The respondents, in their motion for rehearing, quote in their brief from what they claim to be the report of the relator to the Insurance Department, in December, 1925, which shows that paid-up capital of the company was

$500,000, and its surplus approximately $1,384,000, making a total of $1,884,000. While this fact is not in the record it is not disputed by relator. Probably it was in evidence before the Board of Equalization. Whether we may consider it before us or not we know that it cannot be far from the truth because of the facts appearing in the return. Then this company has over and above all reserves, which are unearned premiums, almost two million dollars of taxable assets, and yet pays no taxes, and makes a return showing that its actual assets above liabilities are a little more than a hundred thousand dollars.

IV. We come now to a consideration of the return of June 1, 1925, on which the assessment was based, as follows:

| | Non-Taxable Assets | Assets Outside Missouri* | Assets in Missouri | Total Assets |
|---|---|---|---|---|
| U. S. Gov. Lib. Bonds | $256,869.37 | $......... | $......... | $256,869.37 |
| State, County, Town, City or Mun. Bds. | ......... | ......... | 37,300.00 | 37,300.00 |
| R. R. Pub. Util. and Industrial Bonds | ......... | ......... | 3,754,710.00 | 3,754,710.00 |
| R. R. and Ind. Stock of other States | 481,375.00 | ......... | ......... | 481,375.00 |
| Premiums in Course of Coll. | ......... | 1,339,290.34 | 180,628.69 | 1,519,919.03 |
| Cash on hand and in banks | ......... | 352,925.41 | 97,909.11 | 450,834.52 |
| Accrued Interest on Bonds | 1,687.59 | 59,807.64 | ......... | 61,495.23 |
| Furniture and Fixtures | ......... | ......... | 5,000.00 | 5,000.00 |
| Due from Reinsuring Cos. | ......... | 148.00 | ......... | 148.00 |
| Total | $739,931.96 | $1,752,171.39 | $4,075,547.80 | $6,657,651.15 |

**Deductions**

Reinsurance Reserve ......................$3,066,357.82
Unpaid Policy Claims, (9,000) ............ 1,702,081.02

Total Deductions ..................... $4,768,438.84

Net Amount Subject to Taxation ........ Nil

*Non-taxable in Missouri.

It will be noted that $1,752,171.39 is listed as "assets outside Missouri," and noted as "Non-taxable in Missouri." The Board of Equalization found that it was non-taxable in Missouri. Whatever counsel may say as to the conclusiveness of any finding of facts by the Board of Equalization, it cannot claim that the board's conclusion of law is binding upon this court; for that matter, neither is its finding of fact where it is contrary to the figures presented.

The assets outside of Missouri consisted of premiums in the course of collection, cash on hand and in banks, accrued interest on bonds, and amounts due from reinsuring companies.

In the oral argument it was admitted that unpaid policy claims and the reinsurance reserves, the two items deducted from the taxable assets, represented the entire sums of those liabilities, arising in and out of the State; that the greater part of the business of this company, risks undertaken, were out of the State; that the unearned premiums, fifty per cent of which constitute the reserve, were collected out of this State. Yet, all those liabilities are listed against the assets said to be in this State, and not apportioned in any way to the assets said to be out of this State. The inequity of that position should have appealed to the company in preparing its return.

Since all liabilities for policy claims are to be paid out of assets in this State, the bank deposits and premiums to be collected outside of the State are used for no purpose out of the State, but must be transmitted to the home office and become available to pay such claims, or to replace state funds used for the purpose. Thus a double deduction is inevitable. The foreign claims are deducted, and the foreign collections out of which they are finally to be paid are deducted from the assets. Common justice would require that claims arising in other states, on policies insuring property in other states and paid ultimately out of the premiums collected on such policies out of which the claims arose should not be listed as liabilities against assets in Missouri. But relator strenuously contends for a narrow technical construction of Section 6386, which would not only defeat its purpose, but defeat the policy of the State to maintain equality in taxation, in accordance with the demands of the Constitution. Further, the reserves are almost half the total assets. In what are they invested? More than one-third of the total assets are listed as either tax-exempt or out of the State. *There are not enough taxable assets in the State, after paying the listed claims, to account for the reserves.* Therefore it is inevitable that the reserves are invested, in large amounts, in tax-exempt securities, or they appear in property out of the State. Thus another double deduction appears; the reserves are deducted, and the securities and other property in which they appear as assets, are deducted.

Section 6386 should not be construed so as to permit such an evasion of the constitutional requirement.

V. Another principle makes the issue conclusive against relator's position.

The relator is a Missouri corporation with its headquarters and principal office in St. Louis. Its contracts are Missouri contracts. All the assets said to be outside of Missouri, for aught that appears, are managed at the home office. The premiums in course of collection, when collected, are remitted to the home office in St. Louis; the cash in banks in other states is subject to the company's check drawn in St. Louis.

The principle applicable at this point appears in *"mobilia personam sequuntur."* This principle applied to the question under consideration means that personal property has its situs for the purpose of taxation the domicile of the owner. This is a legal fiction which the authorities say must give way to fact *if* justice requires it. Personal property is either chattels or intangibles. Chattels, under the statute and under the necessities of justice in taxation, are usually taxed in the jurisdiction of their location. We are here concerned only with intangibles, which relator has listed as non-taxable because it claims they are in other states. Intangibles may be further classified as those where evidence of debts consists of bonds, and the like, and those which are mere credits. Bonds and other specific evidences of debt may acquire a situs for the purpose of taxation not in the domicile of the owner, but mere credits have no situs except the domicile of the creditor. These are the general principles applicable here. They are modified in different states by statutes, and by our statutes which we will refer to below.

It is said by Judson on Taxation (p. 490), quoting from a Minnesota case:

" 'Corporal personal property is conceded to be taxable at the place where it is actually situated. A credit cannot be regarded as situated in a place merely because the debtor resides there, must usually be considered as having its situs where it is owned—at the domicile of the creditor. The creditor, however, may give it a business situs elsewhere.' "

With the exception noted that a statute may determine the situs of bonds, notes and the like, and that it may acquire a business situs different from the domicile of the owner, the rule prevails without exception that the domicile of the owner is the situs for taxation of other intangible personal property. A few cases will throw light upon the situation and upon that principle.

In Monidah Trust v. Sheehan, 45 Mont. 424, the State of Montana sought to tax notes secured by mortgages held by a citizen of Dela-

ware. The Supreme Court of that State held that they were not taxable in Montana, and said (l. c. 430):

" '*Mobilia personam sequuntur*' is a maxim of law as old as the law itself, and while it cannot be invoked merely to shield one from the payment of taxes, the presumption nevertheless attaches that personal property, and particularly intangible personal property, such as credits, has its situs for the purpose of taxation only at the domicile of the owner."

In Railroad Company v. Pennsylvania, 82 U. S. 300, the United States Supreme Court had under consideration an act of the Legislature of Pennsylvania which laid a tax on mortgages and money owing by solvent debtors, and under that act the State attempted to tax five per cent interest due on the bonds. This was not an attempt to tax the bonds themselves, but interest on the bonds which was due to a non-resident. The court said (l. c. 319):

"The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. . . .

"Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile wherever that may be. *Their debts can have no locality separate from the parties to whom they are due.*" (Italics ours.)

The court then held that the attempt to tax such debts in the locality where the debtor resides impairs the obligation of contracts; and said, further (l. c. 323-324):

"It is undoubtedly true that the actual *situs* of personal property which has a visible and tangible existence, and not the domicile of the owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions; the former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner; the latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting evidences of debt, are not separated from the possession of the owners."

That case by the United States Supreme Court stating the general principle, with its exceptions, has been quoted and approved in many subsequent cases by the same court and by many states.

In City and County of San Francisco v. Mackey, 22 Fed. 602, it was held that the situs of money and other solvent credits is the residence of the owner or creditor in the absence of a statute.

In Endicott Johnson & Co. v. Multnomah Co., 190 Pac. (Ore.) 1109, the plaintiffs were a New York concern, and brought suit to cancel an assessment of a tax on bonds, notes and accounts due them from citizens of Oregon. It was held they were not taxable in Oregon, and that a statute designed to tax them there would be unconstitutional; that the situs of a note for property taxation purposes is determined by the domicile of the owner, regardless of the physical location of the paper evidencing the debt, citing Blackstone v. Miller, 188 U. S. 189.

National Metal Edge Box Co. v. Town of Readsboro, 94 Vt. 405, was a case where a foreign corporation with its home office and principal place of business in another state kept and collected accounts originating in the State of Vermont. It was held that such accounts were not taxable there; that the situs of the accounts was at the home office of the corporation. The court said (l. c. 407) : "It is a general rule of law, with few, if any exceptions, that debts can have no locality separate from the parties to whom they are due." [Citing many cases.]

Hinckley v. San Diego County, 194 Pac. (Cal.) 77, is a case where a resident of the State of Minnesota died in San Diego, California, and his estate was administered there. The Assessor of San Diego County, in addition to the return for taxation, inserted money and solvent credits amounting to a hundred thousand dollars, and taxed them. The court held that such money and credits were not taxable in California because the tax was assessed while the owner was domiciled in Minnesota. The court notes the principle (l. c. 78), that if one has his domicile in a certain state his personal property has its situs for taxation there.

In Buck v. Beach, 206 U. S. 392, the United States Supreme Court had under consideration a decision of the Supreme Court of Indiana. It was held that notes which were temporarily in Indiana, owned by a resident of the State of New York, which notes were secured by mortgage on property in Ohio, could not be taxed in Indiana. The court said (l. c. 401) :

"Generally speaking, intangible property in the nature of a debt may be regarded, for the purpose of taxation, as situated in the domicile of the creditor and within the jurisdiction of the State where he has such domicile. It is property within that State."

And further:

"It is not the value of the paper as a tangible thing, on which these promises to pay the debts existing in Ohio were written, that was taxed by that State. The property really taxed was the debt itself, as each separate note was taxed at the full amount of the debt named therein or due thereon. And jurisdiction over these debts for the purpose of taxation was asserted and exercised solely by reason of the physical presence in Indiana of the notes themselves, although they were only written evidence of the existence of the debts which were in fact thereby taxed."

The court then distinguishes between secured notes, bonds and other specialty debts, and simple contract debts.

In Fidelity & Columbia Trust Co. v. Louisville, 245 U. S. 54, the United States Supreme Court had under consideration a decision by the Supreme Court of Kentucky. A tax was assessed against a man domiciled in Louisville, but carrying on a business in St. Louis. Missouri. Deposits coming in part from the business in St. Louis were kept in St. Louis banks, subject to the owner's orders. They were not used in the business, and belonged absolutely to him. The question was whether they could be taken into account in determining the amount of lawful taxes. Some of the deposits were represented by certificates of deposit, but the court said: "We are to take it that all the sums are to be dealt with as ordinary bank accounts." It was held that such bank accounts were properly taxable in Louisville, the owner's domicile.

In International Text-Book Company v. Fitzpatrick, 62 So. (La.) 490, the court held that mortgage notes and all kinds of indebtedness shall be taxed only at the situs and domicile of the holder.

As to money on deposit in banks, this court has held that the relation of the bank to the depositor is that of debtor and creditor. [Vandagrift v. Masonic Home of Missouri, 242 Mo. 138; Utley v. Hill, 155 Mo. 232: 7 C. J. 628.] A bank deposit, therefore, is a credit, and comes within the definition of the statute to be noticed below, in relation to credits.

In Fulton County v. Wright, 146 Ga. 447, the principle is stated (1. c. 452): "When the money was placed on general deposit in the banks, the title to the money passed to the banks, and it ceased to be the money of the railroad, and the right of the railroad to the amount deposited became a chose in action. (Citing cases.) A chose in action is taxable at the domicile of the owner." It was held that the deposit was taxable at the place where the principal office of the corporation was located.

In People ex rel. Copper Co. v. Feitner, 66 N. Y. Supp. 769, the court considered a statute declaring all personal property situated and owned within the state as taxable and defining personal property as debts due from solvent debtors, whether on account, bond·or mort-

gage, and an assessment of bills and accounts receivable and payable for goods sold outside the State of New York, some of which were payable in New York and some of them in Chicago. It was held that the statute made taxable every debt belonging to a resident of the state, no matter whether the person from whom it was owing lived within the state or lived without the state.

In Coal Company v. O'Brien, 98 Ohio St. 14, it was held that money of a corporation organized under the laws of the State of Ohio was taxable for money on deposit in banks located outside the State of Ohio, under a statute which provided that "all real or personal property in this State, belonging to individuals or corporations, and all moneys, credits, investments in bonds, stocks or otherwise, of persons residing in this State, shall be subject to taxation, except only such property as may be expressly exempted therefrom."

In Pendleton v. Commonwealth, 110 Va. 229, it was held that money deposited in bank, belonging to a resident of the state, was taxable whether deposited in bank in or out of the state.

In Hunt v. Turner, 54 Fla. 654, a resident of Florida had money on deposit in the bank in Chicago for the purpose of speculation. It was held that it was subject to taxation in Florida.

In Commonwealth v. Semet-Solvay Co., 262 Pa. St. 234, it was held that in determining the value of the capital stock of a domestic corporation for the purpose of assessing taxes upon it, it was proper to consider the value of deposits owned by such corporations in banks located outside of the state, and bills receivable for services rendered and goods sold outside the state and payable outside the state. The court said (l. c. 236):

"The fact that bank deposits in the present instance were in the banks of the other states, and were there used in connection with the defendant's business and operations, or that the accounts receivable were derived from services performed and goods sold and payable outside of this State, did not change their situs for taxation."

In State v. Clement National Bank, 84 Vt. 167, the court had under consideration national bank deposits, and said (l. c. 199):

"Intangible personal property has no independent situs, but follows that of its owner, and can be taxed only where the owner resides. The debts of a corporation, like those of an individual, are the property of its creditors, and can have no locality separate from the persons to whom they are due."

In Kirtland v. Hotchkiss, 42 Conn. 426, 100 U. S. 491, a citizen of Connecticut sought to restrain the assessment of his taxes on bonds executed in Chicago, and made payable in that city. Connecticut had a statute somewhat similar to ours noted below, authorizing the taxation of such securities. It was held that they were taxable, and on error to the Federal Supreme Court that court refused to disturb

the judgment. The court said the question was whether the Constitution prohibits the state from taxing in the hands of one of its resident citizens a debt held by him in another state, and said (l. c. 498):

"The creditor, it is conceded, is a permanent resident within the jurisdiction of the State imposing the tax. The debt is property in his hands constituting a portion of his wealth, from which he is under the highest obligation, in common with his fellow-citizens of the same State, to contribute for the support of the government whose protection he enjoys.

"That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor."

See, also, Scripps v. Board of Review, 183 Ill. 278; Hunter v. Board of Supervisors, 33 Iowa, 376; Thomas v. Mason Co., 67 Ky. 135; Horne, Collector, v. Greene, 52 Miss. 452; People v. Whartenby, 38 Cal. 466; Darcy v. Darcy, 51 N. J. L. 140; State ex rel. Dwinnell v. Gaylord, 73 Wis. 316. In the Scripps case the cases from a number of states are reviewed on the subject, and it was held that in the absence of a statute to the contrary a debt for money loaned to a citizen of one state by a citizen of another state is taxable in the state and county where the creditor resides, although the debt was payable at the debtor's residence to the creditor's agent. In the Iowa case it was held that it was not the notes, as such, that were taxed, but the debts. The notes were evidence of debt; the right to the money being due to the resident of Iowa, the property must of necessity be at the place where he resides, irrespective of the situs of the evidence.

In Westinghouse Company v. Los Angeles, 188 Cal. 492, the question presented was the right of the State of California to levy and collect a tax on money arising from sales on credit through a Los Angeles agency. It was held that the interest from the business was not taxable in California. The court said (l. c. 497):

"All contracts were in the name of the Pittsburg concern and payable to its order. If moneys were collected through the local agency they were deposited to the credit of the home office, and they were not held, paid out, or invested or reinvested by or for the local business. They became assets at once of the Pittsburg concern and were as likely to be expended in Calcutta or London as in the Los Angeles district."

Many such cases arise affecting insurance companies. N. Y. Life Ins. Co. v. Board of Assessors, 158 Fed. 462, was an action by the New York Life to annul an assessment made in Louisiana, and it was held that a bank deposit kept by the New York Life in New Orleans, in which collections were placed solely for transmission to New York, the amount deposited being reported daily and a draft being made

each week by the treasurer of the company for the full amount of the week's deposits, in which no part was used in the company's business in the State of Louisiana was *not* taxable in Louisiana. Although there was a statute in Louisiana which seemed to authorize such taxation, the court in construing it distinguishes a case in Louisiana in which deposits in the bank to the credit of the non-resident were taxable, because the deposits were used for the purpose of the depositor's business in Louisiana, controlled by some agent at that point. In Board of Assessors of Orleans v. New York Life Ins. Co., 216 U. S. 517, the Supreme Court of the United States had under consideration on appeal the case last cited, affirmed the decree, and said (1. c. 523):

"We shall not inquire whether it would or would not be within the constitutional possibilities for a State to tax a person outside its jurisdiction for a bank deposit that only became his or came into existence as property at the moment of beginning of a transit to him, and that thereafter left the State forthwith. It is enough to say that we should not readily believe the Supreme Court of the State would interpret the statutes of Louisiana as having that intent."

In Railey v. Board of Assessors, 44 La. Ann. 768, an insurance agent in Louisiana, represented six insurance companies, for each of which he had money deposited in bank to his personal account and it was assessed to him. The court canceled the assessment and said, quoting from an earlier case, (1. c. 768):

"Debts and other incorporeal rights, when treated as property for the purpose of taxation, can be assessed only at the domicile or place of residence of the creditor, without regard to the domicile of the debtor. The principle applies to corporations as well as to natural persons. Hence, debts due to a foreign corporation by residents of this State cannot be taxed in this State."

It was held that the deposits could not be taxed in that state because the situs of the money was in the domicile of the depositor.

In Metropolitan Life Ins. Co. v. Newark, 62 N. J. L. 74, it was held that money collected in the State of New Jersey belonging to the corporation in New York was not taxable in the State of New Jersey. This was said of premiums collected (1. c. 76):

"This money is merely in transit from the policyholders to the insurers, and for the purposes of transit collected into convenient amounts in the hands of one person. The nature and character of the business done characterizes the money sought to be taxed, and would quite clearly in reason indicate that it cannot be considered a ratable."

In Scripps v. Board of Review of Fulton County, 183 Ill. 278, it was held that the situs of the debt was the domicile of the debtor for the purpose of taxation. The court quotes from an older case, as

follows (1. c. 283): "The right to money due being in the resident of Iowa, the property must, of necessity, be at the place where he resides, irrespective of the situs of the evidence."

In Insurance Company v. Board of Assessors, 44 La. Ann. 760, is where the plaintiff brought suit for cancellation of assessment against the Company, and the court said:

"The premiums of foreign companies are collected through local agencies, and the losses are adjusted by these agencies. . . .

"The companies are the owners of the assets. Payments of losses made here in cash, or by drafts sent by the home companies, do not change their status, in so far as relates to a business residence."

And (1. c. 764):

"A debt to a nonresident of a state is not liable to be taxed by a state in which he does not reside . . .

"The creditor *cannot* be taxed, because he is not within the jurisdiction, and the debts cannot be taxed in the debtor's hands through any fiction of the law, which is to treat them as being for this purpose the property of debtors."

VI. If a person transact business in another state so that his intangible personal property acquires a business *situs* in that state, then it may be taxable in such state. [Endicott-Johnson & Co. v. Multnomah County, 190 Pac. (Ore.) 1109.]

In Johnson County v. Hewitt, 76 Kan. 816, a definition of what is meant by an independent situs is as follows (1. c. 823):

"Generally the element of separation from the domicile of the owner and fairly permanent attachment to some foreign locality should appear, together with some business use of them, or some power of managing, controlling or dealing with them in a business way."

Other quotations of similar import might be made, as where property is used in a business different from the domicile of the owner of the property, so that it becomes localized in the place where the business is conducted and the credits must arise out of a local business.

In Buck v. Board of Commissioners, 103 Kan. 270, L. R. A. 1918F 1140, is a typical case, where a resident of the State of Kansas sold his business in Wyoming and placed the proceeds with an investment company in Missouri, with full power to invest in notes and mortgages, record, release, collect and reinvest the securities, being all the time in possessoin of the agency, the profits only being remitted to the principal. It was held that the securities were not taxable at the residence of the owner in Kansas.

In Jack v. Walker, 96 Fed. 578, it was held that debts owned by non-residents of the State of Ohio, evidenced by notes and mortgages on real estate within the state, were not taxable there unless the possession and control of the securities for the purpose of investment and reinvestment had been surrendered by the owner to a resident agent.

So, to make debts and credits taxable in a state other than that of the domicile of the owner they must be used in an established business, and the proceeds of that business must be under a *management* in such locality with discretion in the manager as to its proceeds. Otherwise, the situs of such credits and debts for the purpose of taxation is the domicile of the owner.

From the above authorities we find the following general principles:

A simple debt is taxable in the domicile of the creditor no matter where the debtor.

It cannot be taxed in a different domicile of the debtor; under the decisions cited from the United States Supreme Court, such a tax would be unconstitutional.

This applies to money deposited in bank, subject to check by the management of the home office.

It applies to debts, such as premiums due on insurance policies.

It applies to interest due from a nonresident on bonds or notes held by a citizen of this State.

In this case the item $59,807.64, accrued interest on bonds, is listed as outside of Missouri. The bonds on which the interest is due are listed as *in* the State. On what theory can the interest on the bonds be separated from the bonds themselves? The interest coupons are attached to the bonds, and are no doubt cashed at a local bank. As we have seen, this cannot be taxed to the debtor, no matter where he is. No state has power to tax one on what he owes. That interest has no situs except at the domicile of the holder of the bond. The premiums in the course of collection, $1,339,290.13, are listed as out of the State, due the company whose principal office is in St. Louis. There is no suggestion that they are payable elsewhere. They cannot be taxed in the state of the policyholder, no matter how they are collected, or transmitted. They could not acquire a situs out of this State *because the very claims arising on those very policies are listed as payable in this State. How can the claims have a situs separate from the policies out of which they arise?*

These claims, amounting to more than $1,700,000, the larger part arising out of this State, are all classed together as liabilities *against assets in this State*. Then those claims are not to be paid out of the bank deposits, or out of the premiums collected in other states. *Therefore, such assets could not acquire a situs in such other states; they were not used for any purpose of the company in the other*

*states, but were only awaiting transmission to the home office.* If the bank deposits in other states were drawn upon to pay policy claims thus listed, it would not alter the situation; for that would prove that such *deposits* have no business situs other than in St. Louis. Besides, in that case such liabilities so paid would not be properly listed against assets in Missouri. The money deposited in banks in other states, subject to check from the home office, under the control of the home office, under *all* the authorities, has no situs apart from Missouri.

VII. Now we will see how our statutes affect the property under consideration here. In State ex rel. Dunnica v. Howard County, 69 Mo. 454, it was held that where municipal bonds belonging to a person who had his domicile in this State, were sent out of the State, not for the purpose of avoiding taxation but for the purpose of safe-keeping, they were not taxable here. Then the statute was passed, now Section 12755, Revised Statutes 1919, as follows:

"Sec. 12755. *Personal property to be assessed in county of owner's residence—exceptions.*—All personal property of whatever nature and character, situate in a county other than the one in which the owner resides, shall be assessed in the county where the owner resides, except as otherwise provided by Section 12773; and all notes, bonds and *other evidences of debt* made taxable by the laws of this State, held in any state or territory other than that in which the owner resides, shall be assessed in the county where the owner resides; and the owner, in listing, shall specifically state in what county, state or territory it is situate or held."

In State ex rel. v. Lesser, 237 Mo. 310, it was held, notwithstanding the statute, that shares of *stock* in a foreign company owned by a resident of this State were not taxable in this State. It was because all the property represented by the shares was in the State where the corporation was located *and was taxed there.* That is in accordance with the statutes and policy of this State where the property of a business corporation is taxed to the corporation and the shares are not taxed.

In Leavell v. Blades, 237 Mo. 695, it was held that a promissory note outside of the State, which had never been in the State, owned by a resident of this State, was not taxable here. The owner had been a resident of the State; he went to Alaska as a gold digger, and in Alaska he acquired some gold dust and a note *secured by mortgage on a mining claim in Alaska.* This note and the gold dust were deposited in a bank in Alaska, *and had never been in Missouri,* and it was held that the note was not taxable in Missouri on that account. It was on the theory that secured notes were in the same

class as bonds, and the like, which acquire a character and situs like specific chattels. The gold dust was not for consideration.

That reasoning .appears in some of the early cases decided before the amendment to our statute. In both of the cases last cited the fact that such specific evidence of debt had never been in the State was emphasized and they were subject to the laws of the place where they were and not of this State.

In re Zooks Estate; Hibbard v. Thompson, State Treasurer, 317 Mo. 986, 296 S. W. 778, it was held by Division One of this court, citing all the cases in this State on the subject, that an inheritance tax was properly assessed against the property left by the deceased, whose domicile was in Missouri when he died, consisting of certificates of stock in a corporation organized under the laws of Nebraska and doing business in the city of Omaha, the certificates being at the time out of the State of Missouri for safe-keeping in Omaha. It was held that they were taxable in this State. Thus it seems that the policy of this State is to consider specific securities, bonds, stocks and the like, as having a situs wherever they happen to be. In the Zooks case, while the stock was momentarily out of the State, it was only out of the State for safe-keeping, but its situs was in Missouri, the domicile of the owner. In the Lesser and Leavel cases, supra, in considering the statute relating to the taxable assets of a person or corporation, particular attention was paid to the statute specifying what shall be in a tax return for such property, on the ground that such statutes indicate the legislative intent with regard to taxable property.

Section 12755 does not specifically mention mere credits or debts, because they are covered by other statutes. Notes, bonds and the like were specifically mentioned to meet the interpretation of the law in the Dunnica case.

At the time of making the assessment, under Section 12766 the property owner shall list his property in the manner described, in ten different items. The sixth item is as follows:

"Money deposited in any bank or other safe place."

That is not limited to banks in Missouri. It is *any* bank or safe place.. A deposit, of course, is never taxed to the banks, but always to the depositor. Under the universal rule shown by the authorities cited, a general bank deposit is a credit which has for its situs the domicile of the depositor. The statute could not be interpreted to limit the list to deposits in this State.

Seventh and eighth items include notes unsecured and secured.

The tenth item includes "*all* property not enumerated (except merchandise)," mentioning several kinds of chattels and other propty; "and every other species of property not exempt by law from taxation."

If deposits in other states are not included in item six, they are covered in item ten.

That is comprehensive enough to cover everything, including debts, credits, which under the general rule are taxable. It only prevents the taxation of property exempt by law from taxation.

Further, by Section 12775 the property of insurance companies, like that of manufacturing and other corporations mentioned in Article 7 of Chapter 90, is now assessed to the corporation, and the shares of stock are not taxed. The property includes among other things, "undivided profits, premiums or earnings, and all other values belonging to such corporation."

Section 12967, Revised Statutes 1919, is headed: "Definition of Terms," and contains this:

"The term 'credits' wherever used in this chapter, shall be held to mean and include every deposit which the person owing, holding in trust or having the beneficial interest therein, is entitled to withdraw in money on demand, and *every claim or demand for money, interest, or other valuable thing due or to become due,* or every annuity or sum of money receivable at stated periods, including pay and salaries accrued or due for any purpose whatever, *and all income or interest accruing* from government bonds, *and all money loaned or invested,* and all indebtedness secured by deed, contract, mortgage or pledge of property of whatsoever kind."

Section 12802, in reference to the duties of assessors, says among other things he shall assess:

"All moneys, notes, bonds and other *credits.*"

Thus we have statutes assessing every form of property which can be owned by a corporation and which is constitutionally taxable in this State. It includes all money in any bank, in or out of this State; all credits whether here or elsewhere, provided it has not acquired a business situs elsewhere, and provided the tangible evidence of the debt is not located in another state.

The three items listed as deductions and considered above are sufficient to wipe out the deficit and leave for taxation much more than twice the amount assessed to relator. It is not necessary to consider the item $481,375, industrial and railroad stocks of other states.

 VIII. The good faith of relator's tax return inevitably obtrudes itself upon our attention.

Consider the item: "Unpaid policy claims, $1,702,081.02."

If Section 6386 should be construed to allow a deduction of unpaid policy claims which are not in fact *liabilities* of the company, then manifestly it would be unconstitutional. It would permit a decrease

724

of net assets, and with no reason for it, thus violating the requirement of uniformity. Section 6222 required reports to the Insurance Department for companies of this character, and provides for a statement of the liabilities of the company, as follows: First, . . .; Second, Losses adjusted and due; Third, Losses adjusted and not due; Fourth, Losses unadjusted and in suspense and waiting for the proof.

Thus all policy claims reported must be *liabilities*. They are either adjusted or in the process of adjustment. We cannot construe that statute as including claims which have no validity, which are not liabilities and never will be. Section 6386 must be construed so that unpaid policy claims must be liabilities as defined and classified in Section 6222. Not unproved claims. What other corporations or individuals of any kind or character can have deductions from its tax list for mere claims which are not liabilities? It was boldly contended in the argument that the unpaid policy claims mentioned in Section 6383, didn't have to be liabilities as mentioned in Section 6222. Here we have unpaid policy claims enough to wipe out the entire capital and surplus of the company, the fund out of which relators argue such claims must be paid. They are not paid out of the reserve, it is contended, but out of its other assets. Whether or not the Board of Equalization took evidence on that feature we cannot tell from the record. It probably did not. But it should have done so and the return should have showed what sort of claims they were. The relator does not comply with that statute simply by repeating the words of the statute. The purpose of requiring a return is to furnish accurate information to the assessor. The unpaid policy claim in the return should have been classified as in Section 6222. By any other contruction Section 6386 would allow any sort of pretended claim whether having any validity or not to come in as a deduction from the assets. We cannot so construe it.

IX. The relator's premiums due in other states are controlled by Missouri contracts, interpreted by Missouri laws. The relator enjoys its prosperity, earns its profits, pays dividends to its stockholders, under the protection of the laws of this State. It is to this State that it owes its existence and its right to do business. Yet, with all its prosperity, it pays no revenue to the sovereignty to which all its privileges are due. The law should not be so construed.

The writ is quashed. *Blair, Ragland, Atwood* and *Gantt, JJ.*, concur; *Gentry, J.*, not sitting; *Walker, C. J.*, dissents.