87 F.2d 567 (1937)
SMITH et al.
v.
AJAX PIPE LINE CO.[*]
No. 10414.
Circuit Court of Appeals, Eighth Circuit.
January 22, 1937.
*568 Nat W. Benton, of Springfield, Mo. (Roy McKittrick, Atty. Gen., of Missouri, and James L. Hornbostel, Asst. Atty. Gen., of Missouri, on the brief), for appellants.
Charles F. Newman, of Springfield, Mo. (L. G. Owen, of Tulsa, Okl., and Ben M. Neale, of Springfield, Mo., on the brief), for appellee.
Before STONE, SANBORN, and THOMAS, Circuit Judges.
STONE, Circuit Judge.
This is an appeal by the county collector of revenue and the prosecuting attorney of Greene county, Mo., from a decree enjoining recovery of a property tax assessed against appellee.
The regularity of the procedure by which this tax was assessed is not attacked. The challenge is that this property is not subject to taxation in Missouri (1) because not situated there; (2) because to lay a tax thereon would be a violation of the Commerce Clause of the Constitution (article 1, § 8, cl. 3); and (3) because the state has no provision for taxation of such property. The trial court based its decree upon a finding that the property had no situs in the state.
In addition to the above issues on the merits, appellants urge two matters. First, appellants urge that their motion to dismiss the petition, ruled on before any hearing on the merits, should have been sustained because:
"The bill conceded the general authority of the commission to make assessments and disclosed due notice and hearing, that the exhibits attached to the bill (tax commission's find) and the board of equalization's order of assessment showed on their face an assessment of property `located in Greene county, Missouri,' and that the evidence heard upon such motions (which was the same as here) established a taxable situs of the credit in question and so disclosed jurisdiction over the property assessed."
While the petition does not challenge the regularity of the procedure of the state tax commission, yet it was not conceded but denied, in the petition, that the property was subject to such taxation and the bare fact that the commission determined that the property was "located in Greene County, Missouri," was in nowise conceded to be accurate, but the contrary was the very crux of the petition.
The second such matter urged by appellants is that relief should be denied because appellee comes with "unclean hands." The argument is that the evidence shows this property was not returned in any other state and that such failure was because appellee considered the situs not in another state and, therefore, it should have been returned for taxation in Missouri. If, as matter of law, this property has its situs in another state and was not there returned for taxation, we may readily concede such conduct to be wrongful but that situation does not affect the state of Missouri. Nor would the belief of appellee, if it existed, that the situs was in Missouri be controlling. The doctrine of "unclean hands" as a bar to equitable relief is not for the purpose of punishing wrong-doing but for the purpose of protecting the court and the parties from having the powers of the court used to bring about an inequitable result in litigation before it.

Situs of Property.
The property here involved is a deposit of $1,296,581.49 existing in the Chase National Bank of New York City, on June 1, 1932. The fact situation as to situs is not in dispute and is as follows: Appellee is a Delaware corporation. Its business is the transportation, for hire, of crude oil. This it did in two pipe lines from Oklahoma through Missouri into Illinois. All such oil is received into the lines in Oklahoma and all is delivered in Illinois to the pipe lines of others for further transportation. The pipe lines which made final delivery to the consignee collected for the entire carriage and deposited appellee's share of the total charge in the Chase National Bank in New York City to its credit. On June 1, 1932, which is the tax return date in Missouri, the general offices of appellee were located in Greene county, *569 Mo., at Springfield. There was no other operating or general office. All of the general officers (the vice president, secretary, treasurer, and general manager) except possibly the president[1] then lived in Springfield. Four of the above general officers were directors in a board of seven. None of the directors were stockholders. The corporate direction, in so far as general policies, seems to have been by a holding company. All meetings of the board of directors were held at Springfield. All operations were conducted from there except no contracts for nor collections for carriage of oil were made there nor did the men there "shape the internal policy" of appellee. The only books, records, or papers of appellee not kept at Springfield were those "papers as to the corporate existence * * * and the records of the holding company" (a separate corporation which held stock in appellee). All operating expenses were paid from Springfield. In fact, all payments by appellee, including dividends, were made by checks of the treasurer on funds deposited in a trust company in Springfield  dividends being drawn only on special order. Such funds were obtained by drafts of the treasurer at Springfield upon the Chase National Bank. The treasurer had authority to draw on the Chase National Bank for any amount at any time needed for operating outlay and, also necessarily, for dividends. The treasurer had no other control over the funds in the Chase National Bank. Also, there was a limit of $15,000 placed upon him as to daily balances in the trust company at Springfield. On numerous occasions, this daily balance was exceeded but such excess seems to be explained by outstanding checks. The pay roll was paid semimonthly and large drafts were drawn on the Chase National Bank to provide funds therefor at the Springfield Trust Company.
A summation of the situation of appellee as shown by the above facts is that of a Delaware corporation doing an interstate oil pipe line business across Missouri and having its corporate officials, only general office and its business books and records located in Missouri, from which office all active operations were conducted except the making of contracts for transportation of oil and the collection and deposit of money therefor. Does such a situation create a situs for taxation in Missouri?
Appellants contend the taxation situs of the bank deposits in New York is in Missouri because such deposits are intangibles and the "business situs" of appellee is in Missouri. Appellee contends that if the deposits are tangible property their situs is in New York while if they are intangible property their situs is in Delaware, which is the domicile of appellee. Bank deposits are not physical  tangible  property but choses in action  indebtedness  intangible property. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 214, 215, 56 S.Ct. 773, 778, 779, 80 L.Ed. 1143; Virginia v. Imperial Coal Co., 293 U.S. 15, 19, 20, 55 S.Ct. 12, 13, 14, 79 L.Ed. 171; Baldwin v. Missouri, 281 U.S. 586, 591, 593, 50 S.Ct. 436, 437, 438, 74 L.Ed. 1056, 72 A. L. R. 1303; Fidelity & Columbia Trust Co. v. Louisville, 245 U.S. 54, 58, 38 S.Ct. 40, 62 L.Ed. 145, L.R.A.1918C, 124. Therefore, the issue presented by appellee that the taxation situs of these deposits is in New York is eliminated. The only issue is whether the tax situs of these intangibles is in Delaware or in Missouri.
Within the Fourteenth Amendment, it is necessary for a state to have jurisdiction over property in order to subject it to ad valorem taxation. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 208, 209, 56 S.Ct. 773, 776, 80 L.Ed. 1143. This requirement attaches to land, to tangible personalty (Wheeling Steel Corp. v. Fox, 298 U.S. 193, 209, 56 S.Ct. 773, 776, 80 L. Ed. 1143; Frick v. Pennsylvania, 268 U.S. 473, 489, 492, 45 S.Ct. 603, 604, 605, 69 L. Ed. 1058, 42 A.L.R. 316) and to intangible personalty (Wheeling Steel Corp. v. Fox, 298 U.S. 193, 209, 56 S.Ct. 773, 776, 80 L.Ed. 1143; First National Bank v. Maine, 284 U.S. 312, 323, 52 S.Ct. 174, 175, 76 L.Ed. 313, 77 A.L.R. 1401).
In determining this taxation "jurisdiction," or situs, two opposed considerations  place of ownership and place of property location  have caused the legal difficulties. In respect to realty, the solution has been simple. In the respect to personalty, the difficulty has been and is very real. This difficulty arises from the common-law rule of mobilia sequuntur personam which is broadly applied in many legal *570 situations of which taxation is but one. But that legal principle is not unassailable. It is a court made rule designed to work out practical justice. Safe Deposit & Trust Co. v. Virginia, 280 U.S. 83, 92, 93, 50 S.Ct. 59, 60, 61, 74 L.Ed. 180, 67 A.L. R. 386; Frick v. Pennsylvania, 268 U.S. 473, 492, 493, 45 S.Ct. 603, 605, 69 L.Ed. 1058, 42 A.L.R. 316. Being such, it is pushed no further than the reason for its existence justifies and where justice requires a departure therefrom exceptions are made, both in other fields of law and in taxation. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 209, 210, 56 S.Ct. 773, 776, 80 L.Ed. 1143; First National Bank v. Maine, 284 U.S. 312, 323, 52 S.Ct. 174, 175, 76 L.Ed. 313, 77 A.L.R. 1401; Farmers' Loan & Trust Co. v. Minnesota, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000; Safe Deposit & Trust Co. v. Virginia, 280 U.S. 83, 92, 94, 50 S.Ct. 59, 60, 61, 74 L.Ed. 180, 67 A.L.R. 386; Liverpool, etc., Ins. Co. v. Orleans Assessors, 221 U.S. 346, 354, 31 S.Ct. 550, 55 L.Ed. 762, L.R.A.1915C, 903; Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 207, 208, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann. Cas. 493; Green v. Van Buskirk, 7 Wall. 139, 150, 19 L.Ed. 109. In the field of taxation, these exceptions are the result of changed economic and business conditions (Wheeling Steel Corp. v. Fox, 298 U.S. 193, 210, 56 S.Ct. 773, 777, 80 L.Ed. 1143) and have constituted a development running through many decisions of the Supreme Court.
This development has followed two lines which are somewhat parallel. The divergence arises from the respective tangible and the intangible characters of the property. Since the matter of situs was the problem of location, the law has long declared the rule that physical location of tangibles within a state gave tax jurisdiction if such location be of such permanence that the property could properly be regarded as a part of the property in the state. The questions in that connection have to do with physical location and permanency of such location. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 208, 209, 56 S.Ct. 773, 776, 80 L.Ed. 1143; Frick v. Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316; Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 206, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493; Delaware, L. & W. R. Co. v. Pennsylvania, 198 U.S. 341, 25 S. Ct. 669, 49 L.Ed. 1077; Old Dominion Steamship Co. v. Virginia, 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059, 3 Ann.Cas. 1100; Pittsburgh & Southern Coal Co. v. Bates, 156 U.S. 577, 15 S.Ct. 415, 39 L.Ed. 538; Coe v. Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715; Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257; Hays v. Pacific Mail Steamship Co., 17 How. 596, 599, 15 L.Ed. 254; Morgan v. Parham, 16 Wall. 471, 474, 476, 21 L. Ed. 303; St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 429, 431, 20 L.Ed. 192.
However, "when we deal with intangible property, such as credits and choses in action generally, we encounter the difficulty that by reason of the absence of physical characteristics they have no situs in the physical sense, but have the situs attributable to them in legal conception." Wheeling Steel Corp. v. Fox, 298 U.S. 193, 209, 56 S.Ct. 773, 776, 80 L.Ed. 1143. This "legal conception" has been a development analogous to and later than that as to tangibles. Wheeling Steel Corp. v. Fox, supra, 298 U.S. 193, at page 210, 56 S.Ct. 773, 777, 80 L.Ed. 1143. At first, the tendency was to apply the domicile, or mobilia sequuntur personam principle on the theory of the difficulty of ascertaining separate property situs although taxation was permitted also in the state where separate situs could be determined  as in the case of mortgages. Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 205, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493. The moving consideration back of allowance of such double taxation was the "practical consideration of collecting the tax upon such property, either in the state of the domicil or the situs." Union Refrigerator Transit Co. v. Kentucky, supra, page 205, of 199 U.S. 26 S.Ct. 36, 38, 50 L.Ed. 150, 4 Ann.Cas. 493. The next step  in analogy to tangibles (Safe Deposit & Trust Co. v. Virginia, 280 U.S. 83, 93, 50 S. Ct. 59, 61, 74 L.Ed. 180, 67 A.L.R. 386)  was to accord a local tax situs "other than at the domicile of their owner, if they have become integral parts of some local business." Beidler v. South Carolina Tax Commission, 282 U.S. 1, 8, 51 S.Ct. 54, 55, 75 L.Ed. 131. Also, see, Liverpool, etc., Ins. Co. v. Orleans Assessors, 221 U.S. 346, 31 S.Ct. 550, 55 L.Ed. 762, L.R.A. 1915C, 903; Board of Assessors of Parish of Orleans v. N. Y. Life Ins. Co., 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597; Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395, 27 S.Ct. 499, 51 L.Ed. 853; State Board of Assessors v. Comptoir National, *571 191 U.S. 388, 24 S.Ct. 109, 48 L.Ed. 232; Bristol v. Washington County, 177 U.S. 133, 20 S.Ct. 585, 44 L.Ed. 701; City of New Orleans v. Stempel, 175 U.S. 309, 20 S.Ct. 110, 44 L.Ed. 174. The final step was to declare that there was but one situs for taxation of intangibles. Farmers' Loan & Trust Co. v. Minnesota, 280 U.S. 204, 209-213, 50 S.Ct. 98, 99, 101, 74 L.Ed. 371, 65 A.L.R. 1000  applied and followed in Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143; Senior v. Braden, 295 U.S. 422, 432, 55 S.Ct. 800, 803, 79 L.Ed. 1520, 100 A.L.R. 794; First National Bank v. Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401; Beidler v. South Carolina Tax Commission, 282 U.S. 1, 51 S.Ct. 54, 75 L.Ed. 131, and Baldwin v. Missouri, 281 U.S. 586, 50 S.Ct. 436, 74 L.Ed. 1056, 72 A.L. R. 1303. What constitutes this "business situs" or "commercial situs" has not been, probably cannot be, definitely defined. Whether it exists is usually the crucial inquiry in this character of cases. It is so here.
We are saved the labor of an extended discussion of the cases which have dealt with this "business situs" and a comparison of the situation in our case with those involved in those cases. The recent case of Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143, dealt with a situation so near to the one before us that we are unable to distinguish the two. The only thing apparently present in that case and absent here is that there the contracts were either made or approved at the West Virginia office while here the contracts for transportation of oil were not made in Springfield. While there is some lack of clarity in the evidence, it seems the entire stock of this appellee was in a holding company (not even qualifying shares being in the directors and officers of appellee). Apparently, this holding or "parent" company determined the general policies and made the contracts for appellee. The nearest direct testimony is that "They [the board of directors of appellee] had absolute control, subject to certain limitations by the parent company, that is limitations placed upon them by a holding company. I would say the board at Springfield could not say the accounts receivable should be paid into the Springfield office and not into the Chase National Bank, even though we were a majority of the board of directors of the Ajax Company, because we had certain fixed policies that we followed in connection with a parent company." What these "limitations" and "fixed policies" were or how exercised is not shown. We cannot think this difference is sufficient to distinguish the Wheeling Steel Corporation Case and thus remove our case from the control of that case.
The Wheeling Steel Corporation decision is but an application of the "practical consideration of collecting the tax" upon the property (Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 205, 26 S. Ct. 36, 50 L.Ed. 150, 4 Ann.Cas 493) and a prevention of escape from taxation foreseen in the Union Refrigerator Transit Company Case, supra, at page 211 of 199 U.S., 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann. Cas. 493, made possible by the methods of incorporation and business revealed in the Wheeling Steel Corporation Case and likewise present here. We think the tax situs of these New York deposits was in Missouri.

Interstate Commerce.
Appellee contends further that even if the tax situs be in Missouri, this tax would be void as a burden on interstate commerce because these deposits are entirely receipts from interstate business. These receipts have come to rest and the tax is not discriminatory. Such are subject to an ad valorem property tax by the state. Virginia v. Imperial Coal Co., 293 U.S. 15, 19, 20, 55 S.Ct. 12, 13, 14, 79 L. Ed. 171.

State Tax Statute.
Appellee contends that even if these deposits have tax situs in Missouri, yet there is no Missouri statute which specifically provides "for the taxation of the intangibles of a foreign corporation licensed to do business in the State, where those intangibles are located outside the State."
Appellee relies upon certain Missouri decisions holding generally that no property shall be taxed unless there is statutory authority therefor. Those decisions are to be understood as within the later announced rule that "the policy of our law, constitutional and statutory, is that no property than that enumerated shall be exempt from taxation" if within the territorial jurisdiction of the state. State ex rel. Globe-Democrat Publ. Co. v. Gehner, 316 Mo. 694, 696, 294 S.W. 1017, 1018. However, this necessitates an examination of the taxing statutes of Missouri and of certain Missouri decisions construing such.
*572 Section 7, article 10, of the State Constitution provides that "all laws exempting property from taxation other than the property above enumerated [in section 6], shall be void." The exemptions in section 6 are quite narrow and have no pertinency here. Section 9742, R.S.Mo.1929 (Mo.St. Ann. § 9742, p. 7862), provides: "* * * Taxes shall be levied on all property, real and personal, except as stated in the next section." The next section (section 9743 [Mo.St.Ann. § 9743, p. 7863]) is substantially a repetition of the above section 6 in the Constitution. Section 9977 (Mo.St. Ann. § 9977, p. 8015) contains definitions of various terms used in the taxing statutes. Therein, "The term `property,' wherever used in this chapter, shall be held to mean and include every tangible or intangible thing being the subject of ownership, whether animate or inanimate, real or personal"; "the term `personal property,' wherever used in this chapter, shall be held to mean and include * * * moneys, credits"; "the term `credits,' wherever used in this chapter, shall be held to mean and include every deposit which the person owning * * * is entitled to withdraw in money on demand." Section 9756 (Mo.St.Ann. § 9756, p. 7872) dealing with what tax returns shall contain, includes "sixth, money deposited in any bank, or other safe place * * * eleventh, * * * and every other species of property not exempt by law from taxation." Section 9792 (Mo.St.Ann. § 9792, p. 7898) dealing with the order of arrangement of property to be valued by the assessor includes "sixth, all moneys, notes, bonds and other credits."
From the above statutory provisions, it is clear that these deposits are included as taxable (see Wright v. L. & N. R. Co., 195 U.S. 219, 25 S.Ct. 16, 49 L.Ed. 167) unless there are Missouri decisions, construing the state tax law, which would exclude them. In State ex rel. American Automobile Ins. Co. v. Gehner, 320 Mo. 702, 8 S.W.(2d) 1057, 59 A.L.R. 1026, the Supreme Court of Missouri had before it the taxable situs of bank deposits outside Missouri belonging to a domestic insurance company having its main office in Missouri. The court made extended examination of many cases, in and out of Missouri, in its discussion of the principles governing the taxable situs of intangible property (pages 712-721 of 320 Mo., 8 S. W.(2d) 1057, 59 A.L.R. 1026). It then examined the Missouri statutes to ascertain whether they covered the property before it (pages 721-723 of 320 Mo., 8 S. W.(2d) 1057, 59 A.L.R. 1026), summing up its conclusion (page 723 of 320 Mo., 8 S.W.(2d) 1057, 1065, 59 A.L.R. 1026) as follows:
"Thus we have statutes assessing every form of property which can be owned by a corporation and which is constitutionally taxable in this state. It includes all money in any bank, in or out of this state; all credits, whether here or elsewhere, provided it has not acquired a business situs elsewhere, and provided the tangible evidence of the debt is not located in another state."
The above statutes and the Gehner Case determine this issue against appellee.

Conclusion.
We conclude that these deposits in New York have a tax situs at Springfield, Mo.; that taxation thereof by the state is not prevented by the commerce provisions of the National Constitution; and that the statutes of Missouri authorize such taxation. The decree is reversed and the case remanded with instructions to set aside the decree and enter a decree dismissing the amended bill of complaint.
NOTES
[*] Writ of certiorari denied 57 S. Ct. 670, 81 L. Ed. ___.
[1] A witness states the president did not then live there but, according to the same witness, the president had an office there and his "address" is given as "Landers Building, Springfield, Missouri" in appellee's Annual Financial Statement to the State Tax Commission for the year ending June 1, 1932.