21 So.2d 151

CONWAY, Secretary of State, v. IMPERIAL LIFE INS. CO. et al.

No. 37139.

Jan. 15, 1945.

Rehearing Denied Feb. 19, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., A. F. Prescott and Helen Goodner, Sp. Assts. to Atty. Gen. (Malcolm E. Lafargue, U. S. Atty., and John A. Patin, Asst. U. S. Atty., both of Shreveport, of counsel), for the United States, opponent and appellant.

Otis W. Bullock and Frank J. Looney, both of Shreveport, for receiver.

Hollingsworth B. Barret, of Shreveport, for intervenors-appellees.

HAMITER, Justice.

On the present appeal, this case presents the single question of whether the claim

of the United States Government for taxes due by an insurance company now in receivership should be paid by preference and priority, out of funds held by the receiver, over the policy obligations of that company.

The issue, which was resolved against the United States by the district court, has the following described factual background:

For a number of years prior to April 1, 1937, the Imperial Protective Union and the American Benefit Association, which were organized under the laws of Delaware and Colorado respectively, sold life insurance in the State of Louisiana, writing policies on the level premium plan, without complying with our statutory requirements relative to the doing of business. On the mentioned date these companies transferred all of their assets, valued at approximately $45,000, to the Imperial Life Insurance Company, a corporation organized under the laws of Louisiana, the transferee assuming all of the policy obligations of the transferors.

The officers of the three companies were identical; and their primary purpose in effecting the transfer was to provide means for qualifying the transferee company to do business in this state. In keeping with this purpose, $23,185 of the assets (in the form of bonds) thus transferred, which previously was a part of the mortuary or reserve funds of the transferors, was deposited, along with other bonds, by the transferee with the State Treasurer as qualifying security in accordance with the requirement of Act 169 of 1908.

On November 17, 1938, pursuant to the petition of E. A. Conway, the Secretary of State of Louisiana, a receiver was appointed for the Imperial Life Insurance Company (at that time admittedly insolvent) with full power to take possession of its property and to liquidate its affairs.

To the tableau of debts filed by the receiver, on which it was not listed as a creditor, the United States tendered an opposition, asserting that the insolvent company was indebted to it for unpaid social security taxes of $1364.24 and also for income taxes, in the amount of $41,647.97, assessed against the above named transferor companies for the years 1934 through 1937. That opposition, ultimately, came before this court, and its consideration resulted in a decree that the United States be recognized as a creditor on the tableau of debts as contended. We pointed out that the Imperial Life Insurance Company was directly obligated for the social security taxes claimed, and that its responsibility for the income taxes of the transferor companies arose, under the provisions of a federal statute, by reason of its being the transferee of their assets. Policyholders were not parties to that proceeding, and, consequently, no question of preference and priority between them and the United States was there presented or determined. See 198 La. 999, 5 So.2d 314.

Thereafter the receiver filed an amended tableau of debts, listing the United States as an ordinary creditor relative to the mentioned tax indebtedness. This amendment was opposed by the United States, it showing that its claim should be paid by

preference and priority after the costs of administration. Also filing oppositions were certain policyholders who asserted that they should be granted preference in payment.

On these oppositions a trial was had in the district court, resulting in a judgment decreeing that "the demands of the Government for priority of its claim on the funds in the hands of the receiver of the Imperial Life Insurance Company are denied, and the claims of the policyholders shall be first paid out of said funds." From the judgment the United States perfected and is prosecuting the instant appeal.

As that judgment indicates, this appeal does not pose any question respecting individual recognition of policyholders of the several companies involved or the rights of those claimants as between themselves. The issue, as we appreciate it and which we attempt to determine, concerns solely the matter of preference and priority of payment, out of the funds in the hands of the receiver, as between the United States on the one hand and the policyholders on the other.

The claim of the United States is predicated upon Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, which provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

There can be no question that the company in receivership (Imperial Life Insurance Company) is indebted to the United States. As above shown, this court, on a previous appeal in the case, decreed that it was liable to the United States for social security taxes under a direct obligation and also, as transferee, for the income taxes originally due by its transferors. Moreover, it cannot be denied that such company has been insolvent since November 17, 1938, for on that date it admitted insolvency when the Secretary of State of Louisiana, alleging that ground, sought and obtained the appointment of a receiver for it. Hence, under the quoted statutory provision the claim of the United States must be first satisfied unless there exists some legal impediment arising out of the nature of the corporation's assets from which satisfaction is sought to be obtained.

According to the record the receiver has only $16,563.25 in his hands for distribution, an amount insufficient to pay both the claim of the United States and the indebtedness due to the policyholders. Those funds were obtained by the receiver from the qualifying securities of $25,000 (the

difference was used in paying receivership expenses) deposited by the Imperial Life Insurance Company with the State Treasurer, and the source of such securities to the extent of $23,185 was the mortuary or reserve funds of the transferor companies, Imperial Protective Union and American Benefit Association.

The deposit was made pursuant to, and as required by, Act 169 of 1908, and the deposited qualifying securities, as that statute specifically provides, was "held by the State Treasurer in trust for the benefit and protection of and as security for the policy holders of the corporation making the deposit." § 4.

■ Thus, under the plain and unmistakable language of the statute, the funds now in the hands of the receiver are impressed and burdened with an expressed trust in favor of and for the benefit of the policyholders. By a provision of law enacted obviously in the interest of society generally and policyholders particularly, not by any voluntary act of the insurance company, the deposited securities were earmarked, segregated and set aside, and delivered to a named trustee, for the sole protection of that definite group. Included in the group are those persons holding policies originally issued by the Imperial Protective Union and American Benefit Association, because the policy obligations of such companies were assumed by the Imperial Life Insurance Company (the corporation that deposited the securities with the State Treasurer) on the confection of the above mentioned transfer of assets. Therefore, by reason of that stat-

utory trust, the claim of the policyholders to the funds in question must prevail over the claim of the United States.

In this connection, it is well to point out that when the deposit was made in April, 1937, by which the discussed trust was effected, the depositing corporation was not insolvent (had it been, undoubtedly its qualifying to do business would not have been permitted); hence, the United States at that time was without right to assert a preferential claim to the deposited securities under the priority statute on which it now relies. Furthermore, we offer the observation that in all probability there would presently be no funds at all for distribution had it not been for the statute requiring the making of the deposit for the protection of policyholders; the money now held by the receiver, which constitutes all of the corporation's remaining property and is the proceeds from the deposited securities, undoubtedly would have been dissipated long ago with the rest of the assets.

In support of the contention that the United States is entitled to a preferential payment, its counsel cite and rely on United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 905, 80 L.Ed. 1321, 104 A.L.R. 741. Therein a New Jersey surety company, engaged in writing surety or fidelity bonds, was declared insolvent upon its own petition, and its assets were placed in the hands of a receiver. Previously, in order to do business in the State of Florida, it had deposited securities with the treasurer of that state as required by statute. In the receivership proceeding the United

States, under Revised Statutes, § 3466, 31 U.S.C.A. § 191, claimed priority of payment of a debt due by the surety company to it. This claim was opposed by certain Florida officials, they asserting that the indebtedness due to the United States must be postponed to the claims due to the Florida creditors. The issue was finally resolved in favor of the United States by the United States Supreme Court, the basis of the decision being the cited federal priority statute, the one under consideration in this cause.

But the Knott case, as we understand it, differs from the instant controversy in two important respects. For that reason we find that it is not decisive or controlling here.

In the first place the Florida statute is entirely different from Louisiana's Act 169 of 1908. The former, pertaining only to companies undertaking to become sureties upon bonds or contracts, provides that any company desiring to engage in business must deposit securities of a specified amount, "which bonds shall be receipted for by the State Treasurer and held or deposited by him", Comp.Gen.Laws Fla.1927, § 6302; that whenever such company ceases to do business in the state, has settled all claims against it, and has been released from all suretyship obligations, the securities shall be returned to it. The Florida statute, in a different section, further provides:

"Whenever final judgment has been rendered against any surety company on a fidelity or surety bond, said surety shall pay the same within thirty days. Upon notice of failure to pay said amount within said time, the State Treasurer shall retain said bonds, or so much thereof as may be necessary to cover said judgment and costs, subject to the order of the court trying any suit that may be brought upon such bond." Comp.Gen.Laws Fla.1927, § 6303.

But nowhere in the Florida statute is it recited that the deposited securities are held by the treasurer in trust for the benefit of any particular or special claimants. That the Florida statute failed to impose a trust for the benefit and protection of the qualifying surety company's creditors, and that such failure was one of the reasons for the result reached by the United States Supreme Court in the Knott case, is clearly indicated by the following statement in the court's opinion: "No one was appointed trustee; and, at the time of the deposit, there was no ascertainable beneficiary."

The Louisiana enactment, on the other hand, in unambiguous and unmistakable language, dedicates the deposited securities to the payment of claims of policyholders; and of the securities the State Treasurer is made trustee and the policyholders beneficiaries by the law when it states that they shall "be held by the State Treasurer in trust for the benefit and protection of and as security for the policy holders * * *."

Secondly, the cases differ materially in that the Knott contest involved a surety company, not a life insurance company as here. To our minds this is an important

distinction. In contrasting life insurance to other forms of insurance, the Supreme Court of Missouri, in State ex rel. American Automobile Insurance Company v. Gehner, 320 Mo. 702, 8 S.W.2d 1057, 1058, 59 A.L.R. 1026, quite appropriately explained:

" * * * One thing in common to the two policies is that each may be canceled or surrendered for a certain cash value. But, if they are not so canceled, the life insurance policy is certain to be paid in the end; whether the loss secured by a fire insurance policy shall ever be paid is contingent. The beneficiary in a life insurance policy has a vested interest, so to speak, in the reserve, which must be paid at the death, an event certain to occur. But a fire insurance policy, particularly automobile insurance, usually runs for a year. It is a remote contingency only that payment for loss would be demanded during that period. So the interest in the reserves of the policy holders in a life insurance company is different, both in kind and degree, from that of a policy holder in the reserves of a fire insurance or liability insurance company."

On the insolvency of a surety company there might not be any indebtedness under its uncancelled policies, since the liability is only remotely contingent. This was recognized in the Knott case, as the following language of the opinion indicates:

" * * * Who would share in the proceeds of the securities could not be known until they were exhausted in satisfaction of judgments, or until the entry of the decree of distribution in a suit authorized by the 1933 amendment. While in the case at bar the Supreme Court [Florida] declared that the deposit created 'a trust fund,' the term appears to have been used to connote an inchoate general lien for the benefit of those persons who may become entitled to be paid from the proceeds, either as unsatisfied judgment creditors, or as Florida creditors at the time when insolvency supervenes. Such an interest lacks the characteristics of a specific perfected lien which alone bars the priority of the United States." (Brackets ours.)

But the contractual obligations of a life insurance company under its outstanding policies are certain to mature eventually. Furthermore, the amounts thus owed are always easily ascertainable from the books of the company. The life insurance policyholders, consequently, are not "persons who may become entitled to be paid from the proceeds"; they are those who are entitled to be paid, and how much they are to receive can be determined at any time. When, therefore, the Louisiana Legislature declared that the deposit by a life insurance company with the State Treasurer would be held in trust for the benefit and protection of the policyholders, it meant just that. It provided something more than an inchoate general lien, even more than a perfected lien, on the securities in favor of those persons; it granted to them a direct interest in the deposit and recognized their right to be paid therefrom by preference and priority over all others.

As authority for the contention that the policyholders had no perfected lien on or direct interest in the deposited securities, counsel for the United States cite Hankins v. Sallard et al., La.App., First Circuit, 188 So. 411, 413. That case simply held that after the appointment of a receiver for a life insurance company a judgment creditor (policyholder) of that company cannot seize in a garnishment proceeding the funds on deposit with the State Treasurer. Accordingly, there was judgment annulling the garnishment proceeding and recognizing the right of the receiver to take possession of the securities in the hands of the State Treasurer to be administered for the benefit of all the policyholders of the insurance company. The claim of the judgment creditor (policyholder) to be paid from the funds was not denied; rather, the court said:

" * * * The trust fund deposited with the state officer can be distributed to the policy holders through the receiver and under the orders of the court just as well, if not better, than by the state officer himself. Whatever rights and preferences the judgment creditor in this case may have against this fund can be protected and recognized in the receivership proceedings. As he acquired no privilege on the fund by a prior seizure, he must be relegated to the receivership proceedings for the assertion and recognition of whatever claim he has against this trust fund."

The judgment appealed from, in our opinion, is correct, and for the reasons given it is affirmed.