**Juan Antonio GARCIA, et al., Plaintiff,**

v.

**ISLAND PROGRAM DESIGNER, INC., Defendant.**

**Civ. No. 91–1679 GG.**

United States District Court, D. Puerto Rico.

Oct. 28, 1994.

Jose O. Vazquez–Garcia, U.S. Attys. Office, Civ. Div., Hato Rey, PR, Josh Eagle, Trial Atty. Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff.

Jesus R. Rabell–Mendez, Rosello–Rentas and Rabell–Mendez, San Juan, PR, for defendant.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

### I. Introduction and Facts

Island Program Designer, Inc. (IPD) was a health service organization under Puerto Rico law. IPD made a statutory deposit of $100,000.00 with the Treasury Department of the Commonwealth of Puerto Rico, as required by law. IPD became insolvent and the Superior Court of Puerto Rico entered an order for liquidation of IPD's assets. The Final Report of the Administrator–Liquidator of IPD indicates that IPD's assets are comprised of what remains of the $100,000.00 statutory deposit.

The U.S. Internal Revenue Service moved to intervene in the state liquidation proceedings and removed the case to federal district court. We then decided that the federal priority statute, 31 U.S.C. § 3713, which grants federal tax claims first priority to a bankrupt company's assets, did not preempt a Puerto Rico insurance company liquidation statute, P.R. Laws Ann. tit. 26, § 4019, which imposes filing deadlines for claims, deadlines which the Internal Revenue failed to meet. The IRS's failure to comply with the filing deadlines placed the priority of the federal tax claim last. We remanded the case to state court. *See Juan Antonio Garcia v. Island Program Designer,* 791 F.Supp. 338 (D. Puerto Rico 1992).

Basing its decision on *Department of Treasury v. Fabe,* —— U.S. ——, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), the First Circuit Court of Appeals decided that the federal statute preempted the Puerto Rico filing deadline statute. The Court granted a petition for mandamus, setting aside our remand order. *See Juan Antonio Garcia v. Island Program Designer,* 4 F.3d 57 (1st Cir.1993). Upon remand to the district court from the circuit court, both the Insurance Commissioner of Puerto Rico and the United States filed motions for summary judgment, which we address in this opinion and order.

### II. Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We consider the undisputed facts in the light most favorable to the non-moving party. *General Office Products Corp. v. A.M. Capen's Sons, Inc.,* 780 F.2d 1077 (1st Cir.1986); *Attallah v. United States,* 955 F.2d 776, 779 (1st Cir.

1992). The burden is on both parties to file necessary materials with the court to support their claims for and against summary judgment. Fed.R.Civ.P. 56(e) and *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 929–30 (1st Cir.1983). The party who moves for summary judgment bears the burden of showing that there is no genuine dispute concerning facts which are material to the issues raised in the pleadings. *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d 985, 991 (1st Cir.1983). At the same time, the opponent must demonstrate, by competent evidence, the existence of a triable issue which is both genuine and material to its claim. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the ... pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). There is no trialworthy issue unless there is enough competent evidence to enable a finding favorable to the nonmoving party.

"Genuine" means that the evidence about the issue is such that a reasonable jury could resolve the point in favor of the nonmoving party. *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992). "Material" means that the fact may alter the outcome of the litigation. *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Materiality is determined under the applicable substantive law. *Gadson v. Concord Hospital,* 966 F.2d 32, 33 (1st Cir.1992).

### III. Puerto Rico Insurance Commissioner's Arguments for Summary Judgment

In *Department of Treasury v. Fabe,* the Supreme Court stated that some sequential priority provisions of insurance company liquidation statutes could survive preemption by the federal priority statute. In order to survive preemption, the provision must have been enacted for the "purpose of regulating the business of insurance" within the meaning of Section 2(b) of the McCarran–Ferguson Act. To determine whether a statute meets this test, courts will focus on the relationship between an insurance company and its policyholders.

The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the "business of insurance." Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder.

*Fabe,* —— U.S. at ——, 113 S.Ct. at 2208, *quoting SEC v. National Securities, Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). The Court held that provisions which were enacted to regulate or protect policyholders meet this test and can survive preemption. As an example, the court held that a provision which grants priority to the administrative costs entailed in liquidation is an insurance-regulating provision designed to protect policyholders. Therefore, such a provision would not be preempted. But the Court also indicated that priorities given to employee wage and general creditor claims were preempted because their "ultimate aim of insurance is too tenuous." *Fabe,* —— U.S. at ——, 113 S.Ct. at 2212.

The Insurance Commissioner argues in his motion for summary judgment that P.R.Laws Ann. tit. 26, § 1914 gives providers of health services a second priority, after subscribers, to the assets of a liquidated HMO. The Insurance Commissioner also argues that the priority given to the claims of health care providers in the liquidation of an HMO are not preempted by federal law because such a priority involves the regulation of the business of insurance and is designed to regulate, protect, or advance the interests of policyholders.

The agreement between IPD and its subscribers included a "hold harmless" clause which prevented health care providers from seeking remuneration for health care services from subscribers and which required

them instead to make their claims directly to IPD. The Insurance Commissioner therefore analogizes the policyholder claims in *Fabe,* which the Supreme Court held were not preempted, with the claims of the health care providers in this HMO context. He argues that the health care providers are making essentially the same claims against IPD that the HMO subscribers would have made if they paid the health care providers directly and later sought reimbursement from IPD. The Commissioner seems to argue that because hold-harmless clauses prevent health care providers from collecting from HMO subscribers, it would be in the interest of HMO subscribers that health care providers be paid ahead of other creditors. The Insurance Commissioner states that if health care providers are granted a priority, no assets will remain from which the IRS can recover federal taxes because the assets of IPD have dwindled from $100,000, from the statutory deposit, to approximately $32,000.

In addition, the Commissioner argues that even if we find that the IRS has a priority over the claims of health care providers the federal priority statute does not apply to IPD's sole asset, the $100,000 statutory deposit, because title to this asset was transferred from the insolvent IPD to the Puerto Rico Secretary of Treasury pursuant to P.R.Laws Ann. tit. 26, § 801, before the time of insolvency. Therefore the deposit does not form part of the insolvent's estate. The Insurance Commissioner seems to suggest that health care provider claims could nevertheless be paid from the funds remaining from the $100,000 statutory deposit, because the statutory deposit is a "special" deposit and the health care provider claims are "special deposit claims," under P.R.Laws Ann. tit. 26, § 4012(3).

## IV. United States' Arguments for Cross–Motion for Summary Judgment

The United States argues in its cross-motion for summary judgment that the claims of health care providers are not entitled to a priority over the claim of the IRS for federal taxes. The government argues that the McCarran–Ferguson Act does not apply in the HMO context. HMOs, even if covered by state insurance liquidation statutes, are not in the business of insurance for McCarran–Ferguson purposes because in the HMO context there are no insurance policies, policyholders, or insureds. The hold-harmless clause of the HMO/subscriber agreement requires that health care providers apply directly to IPD for remuneration. Unlike policyholders under medical insurance plans, subscribers to an HMO pre-pay for medical services and "would not have claims for money they had paid to doctors and for which they sought reimbursement pursuant to an insurance contract." *United States' Cross–Mot. for Summ. J.,* at 15. The government argues that the health care providers under the IPD HMO plan were either employees or independent contractors of the plan. Their claims for compensation are therefore wage claims which the Supreme Court held in *Fabe* bear too tenuous a relationship to the "business of insurance" to survive preemption. In addition, the special deposit claims priority provision, P.R.Laws Ann. tit. 26, Section 4012(3) would not survive preemption because there is no basis for protecting policyholders' claims in the HMO context.

The government claims that the statutory deposit, although held in trust by the treasury, became general assets of the insolvent's estate, pursuant to P.R.Laws tit. 26, § 808, upon the entry of an order of liquidation. The government challenges the Insurance Commissioner's description of the statutory deposit pursuant to P.R.Laws Ann. tit. 26, § 1914 as a special claims fund since it is not limited to claims of a "limited class" as required by P.R.Laws Ann. tit. 26, § 4007(10). The government also claims that, even if the funds were statutorily ear-marked only for "special deposit claims," it has a priority over funds remaining from the $100,000 statutory deposit because the deposit was made for the benefit of all potential creditors, including the federal government, not a limited class of persons.

## V. Law

 The federal priority statute, 31 U.S.C. § 3713 et seq., is to be liberally construed to effectuate its purpose of securing revenue owed to the United States. *United*

*States v. Emory,* 314 U.S. 423, 426, 62 S.Ct. 317, 319, 86 L.Ed. 315 (1941). The burden is on those claiming exemption from operation of the statute to show that they do not fall within its terms. *Bramwell v. U.S. Fidelity & Guaranty Co.,* 269 U.S. 483, 487, 46 S.Ct. 176, 176, 70 L.Ed. 368 (1926). In *Department of Treasury v. Fabe,* the Supreme Court stated that some sequential priority provisions of insurance company liquidation statutes could survive preemption by the federal priority statute. The priority statute under consideration in this case is P.R.Laws Ann. tit. 26, § 4012. In order to survive preemption, the provision must have been enacted for the "purpose of regulating the business of insurance" within the meaning of Section 2(b) of the McCarran–Ferguson Act. The issue under consideration here is whether the Puerto Rico priority statute, P.R.Laws Ann. tit. 26, § 4012, is a law enacted for "the purpose of regulating the business of insurance."

To determine whether a statute was enacted for the purpose of regulating the business of insurance, courts will focus on the relationship between an insurance company and its policyholders. *Fabe* held that provisions which were enacted to regulate or protect policyholders meet this test and can survive preemption. As an example, the court held that a provision which grants priority to the administrative costs entailed in liquidation is an insurance-regulating provision designed to protect policyholders. *Fabe,* —— U.S. at ——, 113 S.Ct. at 2212. But the Court also indicated that priorities given to employee wage and general creditor claims were preempted because their "ultimate aim of insurance is too tenuous." *Id.* In sum, priority provisions aimed at regulating or protecting the relationship between an insurance company and its policyholders would be protected from preemption by the McCarran Ferguson Act, but priority provisions which do not further the interests of policyholders would be preempted by the federal priority statute.

## VI. Discussion

We hold that the claims of health care providers are not entitled to a priority over the claim of the IRS for federal taxes. P.R.Laws Ann. tit. 26, § 1920, indicates that the liquidation of health services organization "shall be considered as that of an insurance company and shall be conducted under the supervision of the Commissioner under the provisions of this code on rehabilitation, liquidation or administration of insurance companies." Examining the facts of this case in light of *Fabe,* we are not convinced that the claims of health care providers in the liquidation of an HMO are sufficiently like those of policyholders in the liquidation of an insurance company, so that federal preemption would not apply.

P.R.Laws Ann. tit. 26, § 4012, the priority statute, nowhere lists subclasses within its priority provisions. It does not distinguish between creditors who are health care providers and other general creditors. We are not convinced by the Commissioner's analogy between the claims of policyholders and the claims of health care providers. The relationship between an insurance company and an insured is not equal to the relationship between an insurance company and a health care provider. We do not agree that health care providers are subrogated to the rights of HMO subscribers against the HMO.

As the parties agree, the agreement between IPD and its subscribers includes a "hold harmless" clause. Such a clause works against the Commissioner's argument. In preventing health care providers from resorting directly to subscribers for compensation, the hold-harmless clause insulates the HMO subscriber. The situation is similar to that in *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). As the Supreme Court states in *Fabe:*

[I]n Royal Drug, we held that an insurer's agreements with participating pharmacies to provide benefits to policyholders was not part of the business of insurance. "The benefit promised to Blue Shield policyholders is that their premiums will cover the cost of prescription drugs except for a $2 charge for each prescription. So long as that promise is kept, policyholders are basically unconcerned with arrangements

made between Blue Shield and participating pharmacies."

*Fabe,* —— U.S. at ——, 113 S.Ct. at 2209, *citing Royal Drug,* 440 U.S. 205, 213–214, 99 S.Ct. 1067, 1074, 59 L.Ed.2d 261 (1979). The same can be said of health care providers in the HMO context. The benefit promised to IPD subscribers was that their premiums would cover the cost of health care services. If that promise is kept, subscribers are unconcerned with the arrangement made between IPD and health care providers. According health care providers a preference may redound to the benefit of policyholders by enhancing the reliability of the HMO, but the effect is indirect and insufficient to avoid pre-emption under the McCarran–Ferguson Act. *See Fabe,* —— U.S. at ——, 113 S.Ct. at 2212, *citing Royal Drug,* 440 U.S. at 217, 99 S.Ct. at 1076.

We find that the health care provider claims are creditor claims under the Puerto Rico priority statute. But we need not decide whether the health care provider claims are either general creditor claims or employee wage claims, as the United States argues. Both of the priority provisions, those regarding creditors and employee wage claims, are designed to further the interests of creditors, not policyholders, or in this case HMO subscribers. As the Supreme Court indicated in *Fabe,* the priorities provisions concerning employee wage and general creditor claims bear too tenuous a relationship to the "business of insurance" to survive preemption. Whichever of these provisions best applies, it is preempted by the federal priority statute because the provisions are designed to further the interests of creditors, other than policyholders and therefore they were not enacted for the purpose of regulating the business of insurance. *See Fabe,* —— U.S. at ——, 113 S.Ct. at 2212.

■ Although we hold that the IRS claim has priority over the health care provider claims to an insolvent's assets, the question remains whether any funds exist from which the IRS may recover. IPD's sole asset is what remains of the $100,000 deposit it made as required by P.R.Laws Ann. tit. 26, § 1914 and P.R.Laws Ann. tit. 26, § 801. Because the funds available are so small, allowing the

health care providers to recover before the IRS would rule out recovery by the IRS. The Insurance Commissioner suggests that health care provider claims have second priority to the funds remaining from the $100,000 statutory deposit, because the statutory deposit is a special deposit and the health care providers' claims are "special deposit claims," under P.R.Laws Ann. tit. 26, § 4012(3). Even if the IRS has a priority over the claims of health care providers as to general assets under the federal priority statute, as we hold, the Commissioner argues that the federal priority statute does not apply to IPD's $100,000 statutory deposit, because the deposit was a "special" deposit, title to which was transferred from the insolvent IPD to the Puerto Rico Secretary of Treasury pursuant to P.R.Laws Ann. tit. 26, § 801, before the time of insolvency. Therefore, the Commissioner asserts that the deposit does not form a part of the insolvent's estate. The United States argues that the fund is not a special deposit fund and that the United States has first priority over the deposit. If the statutory deposit is not a "special" deposit, then it forms a part of the insolvent's general assets, to which the federal priority statute would apply.

Section 4012(3) gives a priority to beneficiaries of a special deposit fund, which pursuant to Section 4007(10) is a "deposit made pursuant to statute for the security or benefit of a limited class or classes of persons, but not including any general assets." *Compare Hill v. Superintendent, Missouri Div. of Ins.,* 678 S.W.2d 434, 437–38 (Mo.App.1984) (Under Missouri law a "special deposit claim" is any claim secured by a deposit for the security or benefit of a limited class or classes of persons, but not including general assets). The Insurance Commissioner's assertion that IPD's statutory deposit was a special deposit pursuant to P.R.Laws Ann. tit. 26, § 1914, under which providers of health services have a second priority, after subscribers, is not supported by the law. The fact that the statutory deposit was held in trust by the Secretary of the Treasury does not have much import to our decision. Section 4007(8) states that "[a]ssets held in trust and assets held on deposit for the secu-

rity or benefit of all policyholders, or all policyholders and creditors in the United States, shall be deemed general assets." *Compare Fletcher v. State Treasurer,* 16 Mich.App. 87, 167 N.W.2d 594 (1969) (No. 4466), *judgment aff'd,* 384 Mich. 289, 181 N.W.2d 909 (1970) (court determined that under the Michigan insurance code the deposited securities were general assets held in trust for the benefit of all policyholders and creditors of defendant's insurer). Section 1914 indicates that a health care organization must make a deposit for the protection of subscribers, providers, and creditors of a health service organization. No conflict exists between these two provisions.

Although the language of Section 4007(8)— "all policyholders and creditors in the United States"—does not exactly duplicate the language of Section 1914, "subscribers, providers, and creditors," they are fairly equivalent, so that the statutory deposit made by IPD pursuant to Section 1914 can be considered a general asset of IPD in liquidation proceedings under the Puerto Rico Insurance Code pursuant to Section 4007(8). "Subscribers" in the HMO context is an equivalent of "policyholders" in the context of other types of insurance. The separate listing of "providers" in Section 1914 merely includes a subclass of "creditors" in Section 4007(8). It is not clear that under Section 1914, "subscribers, providers, and creditors" of health care organizations form a "limited class or classes of persons," as required by P.R.Laws Ann. tit. 26, § 4007(10) for "special deposit claims." In sum, no evidence has been presented that would tend to show that the statutory deposit is also a special deposit. The Fiduciary Agreement merely indicates that the deposit was made as a precondition for doing business in Puerto Rico, as required of all insurance companies. *Compare Fletcher,* 16 Mich.App. 87, 167 N.W.2d 594 (1969) (trust deposit of securities made by domestic casualty insurer was not made for benefit of limited class of persons, so that plaintiffs' claim was not a special deposit claim); *compare Commissioner of Insurance v. Equity General Ins. Co.,* 346 Mass. 233, 191 N.E.2d 139 (1963) (The deposit in Massachusetts, under retaliatory laws, by a Florida insurance company which went into receiver-

ship, was a "special deposit" for benefit of Massachusetts policyholders and creditors who were entitled to prove special deposit claims in Massachusetts ancillary receivership, and ancillary receiver was not entitled to remove the deposit until all special-deposit claims seasonably presented had been finally adjudicated and satisfied); *Hill v. Superintendent, Missouri Div. of Ins.,* 678 S.W.2d 434, 437–38 (Mo.App.1984) (special deposit for the benefit of Missouri policyholders was held "in trust" by superintendent of insurance, so that plaintiffs' claim was a "special deposit claim" not a "secured claim."), *citing G.C. Murphy Co. v. Reserve Insurance Co.,* 54 N.Y.2d 69, 444 N.Y.S.2d 592, 594–95 n. 2, 429 N.E.2d 111, 113–14 n. 2 (N.Y.App.1981); and *Conway v. Imperial Life Ins. Co.,* 207 La. 285, 21 So.2d 151 (1945) (federal priority statute does not supersede Louisiana statute specifically providing that deposited securities are held by state treasurer in trust for benefit and protection of policyholders). We hold that the statutory deposit is not a special deposit for the benefit of a limited class or classes of persons, but a general asset of IPD as defined in Section 4007(8).

■ Because the statutory deposit is a general asset under Section 4007(8), the United States has a priority to the deposit over all creditors other than policyholders. Even if health care providers and creditors were two separate categories, the priority statute does not contain a separate provision for providers. The priority statute, § 4012, does not envision the division of its priority classifications into subclassifications. Although HMO subscribers can argue that they have a priority under *Fabe,* it is not at all clear that health care providers have a "second" priority as the Commissioner alleges. The Commissioner seems to base his argument solely on the fact that in Section 1914 "providers" follows "subscribers." The Commissioner has not cited any legal precedent to support the idea that the mention of "subscribers, providers, and creditors" in Section 1914 sets out priorities in the case of insolvency. Such a contention is refuted by P.R.Laws Ann. tit. 26, § 1920, which indicates that the liquidation of health services organization shall be conducted "under the

provisions of this code on rehabilitation, *liquidation* or administration of insurance companies," which include the priority statute, § 4012. Despite the Commissioner's contention that health care providers have always been accorded a second priority under Section 1914, we have been unable to find any legal precedent nor any legislative history that would suggest that Section 1914 is a separate priority statute applicable to health service organizations, which somehow modifies the priorities set out in Section 4012.

The Commissioner argues that Section 808, which allows an appointed liquidator to recover the statutory deposit to cover certain claims does not apply to this case. The fact that the provisions of Chapter 40, which applies to liquidation proceedings, applies to this case does not cancel out the application of Section 808. Section 808 states:

(1) Any deposit made in Puerto Rico under this title shall be released and returned: ...

(c) Upon proper order of a court of competent jurisdiction, to the receiver, conservator, rehabilitator, *liquidator of the insurer,* or to any other properly designated official or officials who succeed to the management and control of the insurer's assets.

P.R.Laws Ann. tit. 26, § 808 (emphasis added). The "liquidator of the insurer" therefore can recover the statutory deposit and use it for the benefit of policyholders and creditors.

If the deposit is a special deposit, then it would not be a part of IPD's general assets. But the Insurance Commissioner has not indicated to the court how that fact would change the aspect of *Fabe,* holding that priority provisions which benefit creditors, as opposed to policyholders, are preempted by the federal priority statute. The government claims that it has a priority over funds remaining from the $100,000 statutory deposit even if those funds were statutorily earmarked only for "special deposit claims" because the deposit was made for the benefit of all potential creditors, including the federal government, not a limited class of persons.

■ Because Section 1914 includes creditors as beneficiaries, the United States may recover under that section. The Commissioner does not argue that the statutory deposit, if it were a special deposit, would be unavailable to creditors. For example, he concedes that health care providers can recover from the statutory deposit. It also appears from the language of. Section 1914 that the IRS can recover like any other creditor, since the deposit was made for the benefit of subscribers, providers, and *creditors.* Therefore, even if Section 1914 makes the statutory deposit a special deposit, the IRS's claim would receive priority under the federal priority act because the priority provision giving preference to "special deposit claims" would be preempted to the extent that it benefits IPD's creditors over the United States.

## VII. Conclusion

Pursuant to the foregoing discussion, we grant the United States' motion for summary judgment and deny the motion for summary judgment filed by the Puerto Rico Insurance Commissioner.

**SO ORDERED.**